IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANA R.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 24 C 188 |
| v. ) | |
| ) | Magistrate Judge |
| MARTIN J. O'MALLEY, ) | Maria Valdez |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Ana R.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

## BACKGROUND

I. **PROCEDURAL HISTORY**

On November 25, 2020, Plaintiff filed claims for DIB and SSI, alleging disability since November 13, 2015. An Administrative Law Judge ("ALJ") issued an unfavorable decision on December 29, 2021. The Social Security Administration Appeals Council remanded the matter on November 18, 2022. Following remand, the ALJ conducted a telephonic hearing on May 18, 2023. All participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On July 12, 2023, the ALJ again denied Plaintiff's claims for benefits, finding her not disabled under the Social Security Act. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's July 12, 2023 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

II. **ALJ DECISION**

In the ALJ's July 12, 2023 decision, Plaintiff's claims were analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 13, 2015. At step two, the ALJ concluded that Plaintiff had the following severe impairments: seizure disorder; diabetes mellitus; and neurocognitive disorder. The ALJ concluded at step three that Plaintiff's

impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in her total ability to sit, stand, or walk throughout an 8-hour workday; can occasionally climb ramps and stairs, but can never balance or climb ladders, ropes, or scaffolds; should not work where she would be exposed to excessive noise or bright flashing lights which exceed levels generally encountered in office-type environments; should not have concentrated exposure to excessive vibration; should avoid concentrated exposure to temperature or humidity extremes, or pulmonary irritants such as fumes, odors, dusts, gases, poor ventilation, and cleaning fluids; is limited to working in non-hazardous environments, *i.e.*, no driving at work, operating moving machinery, or working on ladders or at unprotected heights, and should avoid concentrated exposure to unguarded hazardous machinery; is limited to simple, routine tasks, work involving no more than simple decision making, and no more than occasional and minor changes in the work setting; ought not perform work which requires multitasking; could perform work performed at a consistent production pace; ought not perform work which requires significant self-direction; is precluded from work involving direct public service, in person or over the phone; and can tolerate brief and

3

superficial interaction with co-workers and supervisors as is common in unskilled work, but is not to perform teamwork or tandem tasks.

At step four, the ALJ found that Plaintiff has not past relevant work. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386,

4

389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ failed to consider how Plaintiff's impairments in combination limit her ability to sustain the on-task and attendance requirements of full-time work; (2) the ALJ erroneously found that Plaintiff's statements are inconsistent

6

based on a misconception of seizure disorders; and (3) the terms used by the ALJ in his RFC assessment and hypotheticals were not adequately defined or realistic. Each argument will be addressed below in turn.

### A.  Plaintiff's Impairments in Combination

Plaintiff argues that "[t]he ALJ committed reversible error by failing to consider the combined effects of Plaintiff's seizure disorder and neurocognitive disorder on her ability to sustain the on-task and attendance requirements of full-time work at any level." (Pl.'s Mot. at 12.) However, Defendant is correct that Plaintiff does not really point to any evidence the ALJ failed to consider and weigh, but rather argues that the ALJ should have weighed the evidence differently. Fundamentally, Plaintiff's argument that the ALJ did not sufficiently consider her impairments together in combination fails as it amounts to an impermissible request that the evidence be re-weighed. *See Cindy P. v. Kijakazi*, No. 20 C 6708, 2022 WL 2802328, at *4 (N.D. Ill. July 18, 2022) ("While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, the Court agrees with Defendant that Plaintiff's contention in that regard amounts to an invitation for the Court to reweigh the evidence."). Ultimately, the Court concludes that the ALJ reasonably evaluated the medical record and considered the combined effects of Plaintiff's impairments when determining Plaintiff's residual functional capacity. Accordingly, the Court finds Plaintiff's first argument unavailing.

### B. The ALJ's Assessment of Plaintiff's Seizure Disorder

For her second argument, Plaintiff asserts that the ALJ did not properly evaluate her seizure disorder and allegations related thereto. In assessing Plaintiff's allegations in relation to her seizure disorder, the ALJ reasoned as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the evidence demonstrates that the claimant's impairments do not preclude her from working entirely. I find the allegations as to the frequency and intensity of the claimant's seizures reported by the claimant and her father at the initial hearing inconsistent, as their allegations are not supported by the medical evidence of record. I find the medical evidence of record reflects that the claimant experiences seizures less frequently, and are brief, lasting 3-4 minutes per the claimant's testimony at the supplemental hearing. The vocational expert testified at the hearing that seizures would preclude work only if the seizures disrupted the workplace, such as tonic-clonic seizures. However, the evidence establishes that the claimant's seizures are infrequent and mild. It is noted that the claimant's seizures generally consist of upper extremity numbness, and smacking of lips. At the initial hearing, the claimant testified she currently has seizures 2-3 times per week, yet even her representative stated this is not currently reflected in the record. In addition, the claimant testified at the initial hearing that she sleeps 13 hours a day. However, there is no basis for this found in the record. Moreover, the claimant's representative acknowledged this was not supported in the record. . . . While the claimant testified that she takes medication once she feels a seizure is coming on, and then sleeps for 90 minutes, there is no support for this in the record. The record shows that at her most recent neurology appointment in January 2023, the claimant reported no clear seizure activity. The treatment record noted her last aura was in January 2021.

(R. 24-25.)

This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . .

8

means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Per the analysis quoted above, the Court finds that the ALJ reasonably determined that Plaintiff's allegations concerning her seizures were not fully corroborated. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms.").

Plaintiff argues in particular that the ALJ failed to explain how Plaintiff's daily activities "would translate into an ability to sustain full time competitive work." (Pl.'s Mot. at 14.) Pertinent to that contention, the ALJ noted that "the claimant is able to handle [a] savings account, count change, prepare simple meals, clean, go out while accompanied to shop, socialize, and engage in daily activities such as playing video games, bingo, reading, and watching television." (R. 27.) Contrary to Plaintiff's assertion, the Court finds that the ALJ did not improperly equate Plaintiff's daily activities with an ability to work full time. Rather, the ALJ appropriately read into Plaintiff's relatively wide-ranging activities that her alleged

9

impairments were not as severe as alleged. *See Darryl S. v. Kijakazi*, No. 22 C 3827, 2023 WL 3169617, at *4 (N.D. Ill. Apr. 28, 2023).

Plaintiff also argues that the ALJ incorrectly determined that her "father's statements were inconsistent with the record, even though, contrary to the ALJ's implication, [Plaintiff's father] did not exaggerate the frequency or length of Plaintiff's seizures." (Pl.'s Mot. at 13.) Plaintiff's contention on this and other points are simply further requests that the Court reweigh the evidence and reach different conclusions. That is an endeavor this Court may not undertake. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). And, ultimately, the Court concludes that the ALJ reasonably weighed Plaintiff's allegations of debilitatingly frequent and severe seizure activity against the objective medical evidence that did not support those allegations. Along those lines, the Court finds that ALJ reasonably concluded that, while Plaintiff did experience seizures, they did not preclude her from performing all work in the national economy.

### C. The Clarity of the ALJ's Usage of Terms

For her final argument, Plaintiff contends that "[t]he terms employed by the ALJ in his RFC assessment and hypotheticals to the VE are not adequately defined and often detached from the reality of competitive employment." (Pl.'s Mot. at 15.) In particular, Plaintiff takes issue with the ALJ's usage of terms like "multi-tasking," "self-direction," "superficial interaction," "non-hectic," and "non-crowded," and asserts that "it is unclear what those terms even mean." (*Id.*) The Court disagrees that these terms are unclear. Furthermore, as Defendant points out, there

10

is no requirement in the regulations that all words presented in the RFC and the hypotheticals be defined in the DOT. Moreover, the Court finds that the ALJ adequately explained the terms he used in the RFC and hypotheticals. Crucially, there is no evidence that the vocational expert was in any way confused by the terms used by the ALJ. For these reasons, the Court finds Plaintiff's final argument unavailing.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary judgment [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:** **August 22, 2024**  
　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　**United States Magistrate Judge**

11